**BOWLES, Adm'r, Office of Price Administration, v. CALIFORNIA SCRAP IRON CORPORATION.**

No. 22530–G.

District Court, N. D. California, S. D.

Nov. 26, 1943.

Ben C. Duniway, John T. McTernan, Myer C. Symonds, Charles L. Hemmings, and Thelma S. Herzig, all of San Francisco, Cal., for plaintiff.

Grove J. Fink, Garton D. Keyston, and Leo H. Shapiro, all of San Francisco, Cal., for defendant.

GOODMAN, District Judge.

By his complaint, the Price Administrator charges the defendant corporation with certain violations of the Emergency Price Control Act of 1942, Public Law 421, 77th Congress, 2nd Session, 56 Stat. 23, 50 U.S.C.A.Appendix, § 901 et seq.

Specifically, it is claimed that defendant infracted price schedule No. 4, iron and steel, as amended (7 Fed. Register 1207). In this schedule, plaintiff established maximum prices for various grades of iron and steel scrap.

In its answer, defendant denied specifically the charge that it exceeded the established maximum prices and alleged that "while technical violations * * * might

have occurred, the same were not wilful and intentional, if so committed the same were due to confusion, lack of understanding, conflicting interpretations of the provisions * * * and have long since discontinued * * *."

Evidence was presented on behalf of the Administrator in proof of the following alleged infractions by the defendant:

1. Offers of and deliveries of up-graded scrap to Columbia Steel Company in violation of Section 1304.13(a) (8).

2. Billing of weighing charges to General Metals Corporation, contra to Sections 1304.1, 1304.6(a) 2 and 1304.7.

3. Excess local truck transportation charges covering cast iron scrap to five consumers, contra to Section 1304.15.

4. Unlawful billing to General Metals Corporation of transportation charges, in the absence of trucking service, contra to Section 1304.15(b) (2) (iii).

5. Excess trucking charges to General Metals Corporation, contra to section 1304.-15(b) (2) (ii).

6. Unlawful collection of brokerage commissions upon sales of scrap originating from Del Paso Iron & Metal Company, contra to Section 1304.6.

7. Payment of illegal commissions in transactions with Associated Oil Company, contra to Section 1304.6(a).

8. Failure to keep proper records, contra to Section 1304.15(b) (2) (iii).

No evidence was presented showing that defendant intended to further violate the applicable regulations nor is there any evidence from which such an inference may be drawn.

█ It is clear to me from the evidence that the infractions committed by the defendant were neither intentional nor in bad faith. The officers of defendant testified, and it is not controverted, that they have been devoting themselves in aid of the government's program to accumulate and conserve scrap metal to further the war effort, and are now, and have been at all times since the last infraction charged, (which occurred almost five months prior to the commencement of this action) in good faith adhering to the Price Control Act and the Regulations and schedules promulgated by the Administrator pursuant thereto.

Under these circumstances, the defendant contends that no reason for the issuance of an injunction appears; that equity does not require, nor is it requisite under the statute, that defendant be enjoined from committing acts which the evidence shows are not likely to occur in the future.

Section 205(a) of the Emergency Price Control Act provides: "Whenever in the judgment of the Administrator any person has engaged or is about to engage in any acts or practices which constitute or will constitute a violation of any provision of section 4 of this Act, * * * he may make application to the appropriate court for an order enjoining such acts or practices, or for an order enforcing compliance with such provision, and upon a showing by the Administrator that such person has engaged or is about to engage in any such acts or practices a permanent or temporary injunction, restraining order, or other order shall be granted without bond."

Plaintiff contends that, regardless of equitable considerations, it is mandatory on the part of the court to issue an injunction upon proof of infractions, irrespective of the time or nature of the infractions and without the necessity of any evidence of an intention to commit further infractions.

If the rules of equity were controlling, the court would not grant an injunction in this case. However, the statute, with which we are here concerned, was in fact enacted by Congress as a war measure. "It is a police regulation of great scope and importance." Brown v. Hecht Co., infra. It is beyond question that the Congress considered the battle against inflation as important to the success of the present war as military and naval action. A breakdown in civilian economy appeared to the Congress to be as great a danger to national security as military or naval attack upon this country itself. It is well stated in the majority opinion in Brown v. Hecht Co., App.D.C., 137 F.2d 689, 694: "When Congress passed the Emergency Price Control Act it realized that there was an emergency. It knew that the war was producing and would produce prodigious increases in public expenditures and private purchasing power together with a dearth of many things for which buyers compete. It knew that unless effective price control was achieved, these conditions would force up prices and then wages to meet prices and then prices to meet wages, until and even after inflation became fantastic. It realized that, as the Senate Committee said, 'of all

the consequences of war, except human slaughter, inflation is the most destructive. * * * Rising prices and increases in the cost of living bring misery to our people, cause industrial unrest, and undermine our unity. * * * Living costs tend to rise more quickly than wages, (and) the burdens of war are haphazardly distributed, with the heaviest burden on the farmer, the salaried worker, the small investor, the pensioner, and the veteran, whose incomes cannot readily be expended. Rising living costs mean labor disputes and spiraling wage demands. And the suspicion of profiteering causes discontent which hampers production as surely as the bombing of factories. Rising prices now foreshadow * * * deflation later with attendant depression and suffering. Such prospects and fears * * * sap energy and morale now. Rising prices limit production. For price uncertainties prevent future planning and long-term commitments which are an integral part of the industrial process. * * * Rising prices inevitably increase the cost of the defense program.' "

 By the Constitution there were committed to the Congress certain extraordinary powers in the event of war. Of necessity, the exercise of such powers is drastic, and dictatorial. The preservation of the country and of the Constitution itself is at stake. Statutes passed pursuant to this power and authority cannot be measured by the same standards as determine the validity of peacetime legislation. In their nature, they must be harsh and call for summary and drastic enforcement, else there would be nothing to administer in time of peace. The Senate Committee, which reported the Act, stated that the program (i.e. anti-inflation program) "is now unlimited national mobilization in a war for survival." Senate Rep. No. 931, 77th Congress 2nd Sess. (1942). Some District Courts have held that it is mandatory upon the part of the court under the instant statute to issue an injunction; others have held contrariwise. The United States Court of Appeals for the District of Columbia in the case of Brown v. Hecht Co., supra, the only Appellate Court decision thus far on this subject, has held that it is mandatory upon the part of the District Courts to issue injunctions upon a showing of infraction of the regulations of the Price Administrator or of the statute. I am persuaded by the reasoning in that case. It has been called to the attention of the Court that the Supreme Court has granted certiorari in the Hecht case and defendant urges that decision herein should be withheld pending the decision of the Supreme Court. I am not compelled to withhold decision. There is no authority to that effect. The court cannot, in the administration of justice, withhold judgment merely because in another case, in which similar issues are being litigated, a decision by the highest court of the land is in the offing. Furthermore, it may well be that the decision of the Supreme Court in the Hecht case may not determine the precise issue raised in this case. In the Hecht case there was evidence to the effect that the defendant was likely to commit future infractions of the regulations. In fact it was so conceded by the defendant. It cannot be foretold what the decision of the Supreme Court may be nor upon what issue the decision may rest.

It is argued by the defendant here that the infractions are minor and insignificant viewed in the light of the substantial volume of its annual transactions; that the issuance of an injunction would be an injury to its good name and that the public needs no protection by way of injunction inasmuch as it does not appear that there is likelihood of any future infractions or violations. It may well be that the institution of this action was not necessary. That, however, is not a matter which concerns this court. Whether an injunction should or should not be sought from the court is a question committed to the discretion of the Administrator.

Congress entrusted the Administrator with the enforcement of the Act. If the Administrator determines that an infraction or violation is such that an injunction should be sought in aid of the public protection, the responsibility for that decision is that of the Administrator and not of the court.

I am of the opinion that Congress intended that upon proof of an infraction, the court should implement the vital anti-inflationary, program, set out in the statute, by the issuance of an injunction at the prayer of the Administrator. The Administrator must show a violation or infraction to make out a cause of action and that legal issue is for the determination of the court. Who can say what effect the failure of a court, on proof of infrac-

tion, to issue an injunction would have upon the safety and welfare of the people of the United States? "Any easy attitude of the courts which even remotely suggests that the Act may be violated with impunity strikes at the entire enforcement problem." Henderson v. Thomas Stores, Inc., D.C., 48 F.Supp. 295, 301.

For the reasons stated an injunction may issue restraining the defendant from further violations in the particulars hereinbefore specifically enumerated.